NEMIE OSGOOD, Appellant, v. EL DORADO WATER AND DEEP GRAVEL MINING COMPANY, Respondent.*

No. 6061; December 2, 1878.

**Waters—Notice of Intent to Appropriate—Relation of Title.—** One who posts notice of intention to appropriate the waters of a stream on the public domain, and proceeds with due diligence to actual appropriation, will be deemed to have appropriated the water and been in possession of the same, and the rights appurtenant thereto, from the date of posting the notice.

**Waters—Notice of Intent to Appropriate—Conflicting Rights.** Where one, from the time of posting notice claiming certain waters, pursues the work of appropriation with due diligence until it is accomplished, the act of Congress of 1866 operates to confirm his claim as of the date of posting the notice, although in the period intervening between the notice and the completion of the work, another person acquires, as against the United States, the title to land through which the stream ran in its natural course.

**Waters—Appropriation of Several Streams as Part of System.—** In order that work done in appropriating the waters of one stream may be counted toward appropriating the waters of another disconnected stream, the posted notice must declare in terms that the purpose is to acquire the right to the waters of both streams.

APPEAL from Eleventh Judicial District, El Dorado County.

---

*For subsequent opinion, see Osgood v. El Dorado etc. Min. Co., 56 Cal. 571

T. B. McFarland for appellant; Geo. G. Blanchard, J. Garber and Creed Haymond, for respondent.

McKINSTRY, J.—1. Under and by virtue of the provisions of the act of Congress of July 26, 1866, "granting the right of way to ditch and canal owners over public land," etc., one who has actually appropriated the waters of a stream on the public lands before the acquisition by another of the United States title to a tract of land on the stream below has acquired the exclusive right to the use of the waters appropriated as against such inferior proprietor.

2. It is assumed for the purposes of this case that one who has posted a proper notice and pursued work with due diligence until the appropriation is complete has, under the act of Congress of July 26, 1866, the exclusive right to the water, as against a person who, after the notice and before the actual appropriation was completed, acquired the government title to a tract of land through which the stream ran in its natural course.

3. With this assumption the plaintiff should have had a decree upon the facts of the present case.

4. Whether, according to the local rules and customs recognized by the courts or the judicial decisions of this state, work done toward appropriating the waters of one or more streams on the public lands may ever be considered and treated as work done toward appropriating another separate and independent stream, query.

5. Assuming that it may, yet in order that the work done toward taking out the waters of the one or more streams shall be counted as done toward appropriating the other separate and disconnected stream, the notice posted upon the last must distinctly declare the intention to appropriate the waters of all, and that the water is to be diverted from each as part of a scheme which includes the appropriation of the waters of all.

Under the rules and customs recognized by the courts and the judicial decisions of the state, and as against one attempting to appropriate the same water while the works of the first claimant are yet incomplete, a party posting a notice of intention to appropriate the water of a stream on the public do-

main, and proceeding with due diligence to make actual appropriation, has been deemed to have appropriated the water and to be in possession of the same and the rights appurtenant thereto from the date of the posting of the notice.

The defendant bases its claim to the waters of Echo lake and the outlet therefrom, or "Osgood creek," upon the act of Congress of July 26, 1866 (U. S. Stats. at Large, p. 253). The ninth section of that act provides: "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and decisions of the courts, the possessors and owners of such vested rights shall be maintained. and protected in the same, and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed; provided, however, that whenever, after the passage of this act, any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

There can be no doubt that the language of the foregoing section operates, ex proprio vigore, as a grant of the rights and claims embraced within the words employed. It is a recognition by the federal government of the rights already recognized by the state judiciary. We may assume that if, from the time the predecessors of defendants posted a notice claiming the waters of Echo lake, they pursued the work of appropriating such waters with due diligence, until the appropriation was actually accomplished, the act of Congress operated to confirm their right to the use of the same as of the date of the posting of the notice, even although in the period intervening between the notice and the completion of the work, the plaintiff acquired, as against the United States, the title to the land through which the stream ran in its natural course. Thus much we do not admit absolutely, but for purposes of the case before us and as presenting the claim of defendant in its strongest light.

On the 25th of October, 1871, the plaintiff received a patent from the United States for the tract deprived of water by reason of the subsequent diversion of Echo lake and Osgood

creek. From that date, at least, plaintiff became a riparian proprietor. If the predecessors of defendants had not acquired a right to divert the water which would have been available against a subsequent appropriator, the decree should have been for the plaintiff; for certainly the position of the plaintiff when he obtained a United States patent was as favorable as would have been that of a mere appropriator of the water.

We inquire, therefore, had the grantors of defendant acquired a right to the waters of Echo lake, as against the government, or the grantee of the government, when the patent issued to plaintiff?

The first necessary step to be taken by defendant's grantors was to post a notice at or near Echo lake, or the outlet, declaring their intent to appropriate the waters. The notice seems to have been posted at the outlet of Echo lake in the year 1860. The witness Kirk, being asked what were the contents of that notice, answered: "Claiming as a reservoir to keep the water back to supply this ditch which is built on this line, located in 1860; also, claiming the waters of the lake for the purposes of supplying this present ditch." The witness had previously stated that he posted the notice "at the outlet of [Echo lake], where the present ditch starts out," and there can be no doubt that the ditch referred to in the notice posted in 1860 was the contemplated ditch from Echo lake, upon which, as the witness subsequently stated, work was commenced in 1872. There is evidence in the record which may, perhaps, be construed as tending to show that a survey of the line of the ditch leading from Echo lake was made during or prior to the year 1860 (Transcript, pp. 44, 45), but it is quite certain that nothing more was done toward appropriating the waters of that lake until after a second notice was posted. The second notice was posted in February, 1867, and was in the following words and figures:

"In conformity with an act of Congress, entitled 'An act granting the right of way to ditch and canal owners over the public lands, and for other purposes,' approved July, 1866, the undersigned hereby claim, and are by priority of possession, entitled to the use of the water of this stream for mining, manufacturing, agricultural and other purposes, and intend to dam said stream and carry the same, or a portion thereof,

in a flume, ditch or canal, or by natural channels whenever found suitable, to certain mining and agricultural districts, and that the construction of said flume or ditch will not injure any settler on the public domain.

"J. KIRK.
"F. A. BISHOP.

"February, 1867."

From the date of the second notice until the spring of the year 1872, no work was done upon the canal leading the waters from Echo lake. As we have seen, the plaintiff's patent was issued in October, 1871.

It is quite evident from this statement that, treating the effort of defendant's grantors as an independent, separate attempt to appropriate the waters of Echo lake and of the outlet, Osgood creek, they had acquired no right to those waters which could be asserted against the lower riparian proprietor at the time his patent issued to plaintiff.

And this brings us to another question, which must determine the decision of this cause.

It is urged by respondent that an individual or association may acquire a right by appropriation to the waters of any number of disconnected streams on the public lands by posting a notice at the point of intended diversion of each, and that (as against a subsequent appropriator of the water or grantee of the government of lands through which one of the streams may flow) work done on a canal or ditch leading the water from any other of the streams should be considered as done in carrying out a general scheme of conducting the waters from all, so as to give the better right, although no work has been done toward diverting and appropriating the waters of the particular stream prior to the actual adverse appropriation of those waters, or prior to the acquisition of the government title to a tract of land lying upon the stream below.

Without admitting that the principle of "relation" applicable to the acquisition of water rights upon the public lands can be relied upon for the purpose mentioned in the above statement, we are entirely convinced that, to give effect to the notice as evidence of the initiation of a right to the waters of a particular stream when work has been done only toward establishing a conduit for the waters of another and separate stream, the notice should declare in terms that the

purpose was to acquire a right to the waters of both. The notice of itself gives no title, but points one subsequently desiring to acquire rights in the water to work done with reference to the design indicated by the notice. If, after the lapse of a reasonable time, no work has been done toward appropriating the waters, the intention to appropriate which is declared in the notice (or such work has not been prosecuted with proper diligence), a third party may assume that the intended appropriation has been abandoned, and is not required to inquire whether there was a secret purpose in the minds of those who posted the notice to make the appropriation broader than the notice, or a hidden intent that the appropriation should constitute part of a scheme to acquire rights in the waters of many distant and disconnected streams. Certainly he would not be held to have knowledge that work done to divert other streams, in accordance with a notice posted on each of an intention to appropriate its waters, was really done to carry out the design to appropriate the waters of a stream, to divert which no work had been done.

Applying these rules to the present case, there was nothing in the notice of 1860, or that of 1867, to indicate an intention to take up, claim or appropriate other waters than those of Echo lake or its outlet, and the record shows an utter want of diligence in prosecuting the work to make such appropriation actual.

Judgment and order reversed and cause remanded.

We concur: Crockett, J.; Niles, J.; Rhodes, J.; Wallace, C. J.